UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARNOLDO X GARZA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-10-100 |
| | § | |
| SMITH INTERNATIONAL, INC.; dba | § | |
| WIRELINE CONTROL SYSTEMS, | § | |
| | § | |
| Defendant. | § | |

### ORDER

On this day came on to be considered Defendant's Motion for Summary Judgment. (D.E. 18). For the reasons stated herein, said motion is GRANTED.

**I.    Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) as Plaintiffs bring suit pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA").

**II.   Background**

Defendant Smith International, Inc. ("Smith)," d/b/a Wireline Control Systems ("WCS"), is a company that operates, rents and delivers wireline pressure-control equipment.[1]

Plaintiffs Arnoldo X. Garza and Leonel Camarillo were both employed by Defendant as "operators." Garza worked for Defendant from June 2001 to March 2010. For the last three years of his employment, Garza worked as an operator. Camarillo worked for Defendant from June 2006 to July 2009 as an operator. As operators, Garza and Camarillo were responsible for, among other things, performing on site pressure control services for Defendant's oil and gas

---

[1] WCS is formally known as "Boyd's Bit Service, Inc." (D.E. 18, Ex. C at 1.)

customers and transporting pressure control equipment throughout south Texas. Both Plaintiffs were paid a fixed salary and never received overtime pay even though they claim they regularly worked in excess of 40 hours per week. (D.E. 3 at 3-4.)

On April 6, 2010, Plaintiffs filed a Complaint alleging violations of Section 207 of the Fair Labor Standards Act ("FLSA") due to Defendant's alleged failure to pay Plaintiffs overtime wages. (D.E. 1.)

On January 14, 2011, Defendant filed this Motion for Summary Judgment, contending that Defendant is entitled to judgment as a matter of law on Garza's and Camarillo's claims for unpaid wages under the FLSA. Defendant contends each of the Plaintiffs was properly classified as an exempt employee under the Motor-Carrier Act exemption codified in 29 U.S.C. § 213(b)(1), which, in general, exempts private motor carriers from paying overtime under the FLSA for employees engaged in activities that directly affect the safe operation of motor vehicles in interstate transportation. (D.E. 18.)

Plaintiffs timely responded, contending that issues of fact remain with regard to whether they were properly classified as "drivers" or "loaders" who fall under the exemption; that any interstate activity was *de minimis*; and that plaintiffs are thus entitled to overtime pay under the FLSA. (D.E. 19.)

### III. Discussion

#### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and

unsupported speculation are not sufficient to [avoid] summary judgment"). Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B. Analysis

The FLSA establishes a general rule that requires employers to compensate any employee "at a rate not less than one and one-half times the regular rate at which he is employed" for the time worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1).

The Motor Carrier Act ("MCA") provides an exemption from the maximum hours/overtime provisions of the FLSA. 29 U.S.C. § 213(b)(1). Section 213(b)(1) exempts an "employee with whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935." 29 C.F.R. § 782.1(a); see also 29 U.S.C. § 213(b)(1).

Code of Federal Regulations Section 782.2(a) provides that:

[t]he power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who:

(1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act, and

(2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

§ 782.2(a) (internal citations omitted).

Exemptions under the FLSA are construed narrowly and against the employer. See Songer v. Dillon Resources, Inc., 636 F.Supp.2d 516, 2009 WL 2135791, at *4 (N.D.Tex. July 15, 2009). The employer has the burden to prove that the exemption applies. Id.

### 1. Whether Plaintiffs Are Employed By A Private Motor Carrier Subject to the Secretary's Power

The first inquiry is whether Plaintiffs "are employed by carriers whose transportation of property by motor vehicle is subject to" the Secretary's jurisdiction. 29 C.F.R. § 782.2(a)(1).

Defendant asserts it falls under the Secretary's jurisdiction as a "motor private carrier," defined as:

> a person, other than a motor carrier, transporting property by motor vehicle when-
>
> (A) the transportation is [in interstate commerce];
>
> (B) the person is the owner, lessee, or bailee of the property being transported; and
>
> (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102.

On August 10, 2005, the Safe, Accountable, Flexible, Efficient Transportation Equity Act ("SAFETEA-LU") went into effect. Pub.L. No. 109-59, § 4142, 119 Stat. 1144, 1747. This amendment restricted the DOT's regulatory authority (and thereby narrowed the FLSA exemption) to only those motor carriers and motor private carriers who operated "*commercial motor vehicles*" under 49 U.S.C. § 31132. Pursuant to 49 U.S.C. § 31132, a "commercial motor vehicle" means a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle--

> **(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;**
>
> (B) is designed or used to transport more than 8 passengers (including the driver) for compensation;
>
> (C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or

(D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

§ 31132 (emphasis added).

On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub.L. No. 110-244, §§ 305-06, 122 Stat. 1572, 1620-21 (2008). The TCA reconfirmed that the MCA exemption does not apply to drivers operating motor vehicles that weigh 10,000 pounds or less. See Glanville v. Dupar, Inc., 2009 WL 3255292, *4 (S.D. Tex. Sept. 25, 2009) (citing 110 P.L. 244, § 306; 122 Stat. 1572, 1620-21 (2008); Brooks v. Halsted Comm'ns Ltd., 620 F.Supp.2d 193, 197-98 (D.Mass.2009)).

As a court in this district recently explained, when determining whether a truck towing a trailer constitutes a "commercial motor vehicle" in excess of 10,001 pounds, the proper calculation is performed by adding the gross vehicle weight of the truck to the weight of the trailer and cargo. Id. at *7.

In this case, according to the declaration of WCS's General Manager, Berley Gibson, Defendant has shops or offices in Louisiana and Texas and conducts its business in several states, including Texas, Louisiana, New Mexico, California, Oklahoma and Alabama. (D.E. 18, Ex. C (Declaration of Berley Gibson) at ¶¶ 5, 12.)[2] According to Gibson, Defendant's operations

---

[2] Plaintiffs object to Gibson's declaration on the grounds that the declaration is allegedly not in conformity with the form prescribed in 28 U.S.C. § 1746; is not based on personal knowledge; and contains conclusory statements. (D.E. 19 at 5-7.) However, this objection is unfounded. First, Gibson's declaration is sworn under penalty of perjury and states that the information therein "is true to the best of [his] information and belief." It thus substantially conforms with the requirements of § 1746 that the declarant declare under penalty of perjury that the "foregoing is true and correct." Compare Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1305-1306 (5th Cir. 1988) (holding affidavit correctly excluded when it is neither sworn nor its contents stated to be true and correct). Second, Defendant has met its burden to show the declaration is based on personal knowledge. The substance of an affidavit must simply demonstrate the affiant has personal knowledge of the facts contained therein. Schneider v. OG & C Corp., 684 F.Supp. 1269, 1271 n. 6 (S.D.N.Y.1988); Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F.Supp. 312, 315-316 (D.Md.1983). Gibson is WCS's General Manager and can be expected to have personal knowledge of the daily operations of Defendant's business. Finally, Gibson provides sufficient facts to support his conclusion that Garza and Camarillo would have been required to go out of state to make a delivery if needed. (D.E. 18, Ex. C at ¶ 9.) Whether Gibson is to be believed goes to the weight of the evidence, not its

sometimes required Defendants' operators to deliver and/or transport equipment across state lines for customers, and to provide on-site services to customers in other states. (Id. at ¶¶ 7, 8, 9, 11.) Defendant's equipment is transported by an 18-weheeler tractor-trailer, stake bed dual-axle flat bed truck, or a Ford F-250, F-350, F-450 or F-550. (Id. at ¶ 17.) Some of the wireline pressure control equipment Defendant rents weighs in excess of 10,001 pounds. (Id. at ¶ 16.) Gibson contends the vehicles and equipment combined exceed a gross vehicle weight of 10,001 pounds. (Id. at ¶ 18.)

Defendant has also submitted several photographs of the trucks and trailers that its employees drive to deliver equipment, as well as photographs of the equipment itself loaded on the trailers. (D.E. 18, Ex. C.)

Based on these depictions of WCS's business, it appears that Defendant, through its employees, transports property that it owns between state lines using "commercial motor vehicles" in furtherance of a commercial enterprise. Therefore, Defendant has met its burden on summary judgment to show it qualifies as a private motor carrier under § 13102.

Plaintiffs do not refute Gibson's assertions regarding the gross weight of Defendant's vehicles and cargo, or the interstate nature of Defendant's business activities. Rather, Plaintiffs state that they do not dispute "in this summary judgment proceeding only, that the defendant qualifies as a 'motor private carrier' within the meaning of the statute." (D.E. 19 at 4.)

However, Plaintiffs cannot thus avoid their duty to produce evidence responding to Defendant's allegations on summary judgment. Defendant has met its burden to produce sufficient evidence demonstrating that it is a "motor private carrier" for purposes of the exemption. It is Plaintiff's burden as the non-moving party to show that summary judgment is

---

admissibility. Plaintiff has not provided sufficient evidence to refute Gibson's contentions regarding the nature of WCS's business.

inappropriate. Rivera, 349 F.3d at 247. Because Plaintiff has not produced any countervailing evidence, the Court must find that Defendant is a "private motor carrier" as a matter of law.

Therefore, the only remaining question before the Court on summary judgment is whether Plaintiffs are employees who perform duties that directly affect the safety of operation of motor vehicles in interstate transportation. § 782.2(a).

### 2. Whether Plaintiffs Engaged in Activities That Directly Affect Operational Safety of Motor Vehicles In Transport of Property In Interstate Commerce

The second part of the MCA exemption inquiry is whether the Plaintiffs "engage in activities that directly affect the operational safety of motor vehicles in the transport of property in interstate commerce" as defined by the MCA. 29 C.F.R. § 782.2(a)(2).

The Federal Code of Regulations outlines the classes of work that qualify an employee for the MCA exemption, stating that "[t]he exemption is applicable . . . to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a **driver**, driver's helper, **loader**, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." 27 C.F.R. § 782.2(b)(2) (citing Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695 (1947); Levinson v. Spector Motor Service, 330 U.S. 649 (1947); Morris v. McComb, 332 U.S. 442 (1947)).

In determining whether employees are in an exempted class, neither the title of the position or name given to the duties is controlling. 29 C.F.R. § 782.2(b)(2) (citing Pyramid, 330 U.S. at 707). Instead, the character of the duties involved in the performance of the job are determinative. 29 C.F.R. § 782.2(b)(2).

"As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (**or…is likely to be**) called upon in the ordinary course of his work to perform, **either regularly or from time to time**, safety-affecting activities of the character described in paragraph (b)(2) of this section" – i.e. "activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce" – "he comes within the exemption in all workweeks when he is employed at such job." § 782.2.(b)(3) (emphasis added). "[T]he rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'" Id.

However, Section 782.2(b)(3) further provides that "where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*, the exemption will not apply to him in any workweek so long as there is no change in his duties." Id. (citing, e.g., Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695.).

In this case, Defendant contends it is exempt and not required to pay overtime wages under the FLSA because Plaintiffs were "drivers" or "loaders" whose activities were subject to regulation by the Secretary of Transportation. Plaintiff contends Plaintiffs were not "drivers" or "loaders" and that, in any case, any interstate activity they engaged in was *de minimis* pursuant to Section 782.2(b)(3).

Applying the principles outlined above, the Court finds that Defendant has met its burden on summary judgment to demonstrate that Plaintiffs were "drivers" or "loaders" who fall under

the MCA exemption to overtime pay, and that the Plaintiff has failed to demonstrate that the *de minimis* exception applies.

### a. Whether Plaintiffs Were "Drivers" Under the MCA

A "driver" as defined for purposes of the MCA is "an individual who drives a motor vehicle in transportation … in interstate or foreign commerce." § 782.3. "This definition does not require that the individual be engaged in such work at all times; it is recognized that even full-duty drivers devote some of their working time to activities other than such driving. 'Drivers,' as thus officially defined, include, for example, such partial-duty drivers as the following, who drive in interstate or foreign commerce as part of a job in which they are required also to engage in other types of driving or nondriving work: Individuals whose driving duties are concerned with transportation some of which is in intrastate commerce and some of which is in interstate or foreign commerce within the meaning of the Motor Carrier Act; individuals who ride on motor vehicles engaged in transportation in interstate or foreign commerce and act as assistant or relief drivers of the vehicles in addition to helping with loading, unloading, and similar work; drivers of chartered buses or of farm trucks who have many duties unrelated to driving or safety of operation of their vehicles in interstate transportation on the highways; and so-called 'driver-salesmen' who devote much of their time to selling goods rather than to activities affecting such safety of operation." § 782.3.

The Fifth Circuit recently explained that the MCA exception applies *regardless* of whether an employee regularly personally transports property by motor vehicle across state lines, so long as the employee "can be reasonably expected to perform interstate transport" and his job duties are such that he is or "is likely to be" "called upon in the ordinary course of his work to

perform, either regularly or from time to time, safety-affecting activities of a driver." Songer v. Dillon Res., Inc., 618 F.3d 467, 474 (5th Cir. Tex. 2010) (quoting 29 C.F.R. § 782.2(b)(3)).

In Songer, the Fifth Circuit held that plaintiffs were not entitled to overtime under the FLSA due to the MCA exception. In that case, the plaintiffs were hired as truck drivers and operated commercial trucks to haul materials to and from mines and quarries. Id. at 468-469. In finding the plaintiffs were drivers subject to the Secretary's power, the court noted the following circumstances:

> As drivers, Plaintiffs must meet DOT and Federal Motor Carrier Safety Regulations (FMCSR) requirements prior to assuming their driving duties. Plaintiffs must have a valid Class A commercial drivers license and meet the driver qualification requirements of FMCSR Parts 382 and 391. Upon hire, Plaintiffs are issued the FMCSR Pocketbook, a compilation of relevant regulatory information. The drivers also participate in New Hire Safety Orientation to review the FMCSR and the difference between interstate and intrastate hours of service regulations. After being hired, Plaintiffs must record their hours of service and complete driver vehicle inspection reports pursuant to the FMCSR.

Id. at 469-470. Because this evidence, as a whole, indicated that the plaintiffs had been hired in order to drive motor vehicles across state lines, the court held that plaintiffs were "drivers" under the MCA and that their employer was not obligated to pay them overtime under the FLSA. Id.

In this case, like in Songer, the evidence conclusively demonstrates that each Plaintiff was hired as an employee who might be "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of a driver." 618 F.3d 474.

Defendant's General Manager, Berley Gibson, states in his declaration that Garza and Camarillo were hired as "operators" and that – like other operators hired by Defendant – they were expected to make deliveries across state lines with equipment and tools. (D.E. 18, Ex. C at ¶¶ 7, 14.) Garza's and Camarillo's own testimonies support this characterization.

With respect to Plaintiff Garza, Garza testified that his tasks as an "operator" consisted primarily of operating pressure control equipment on location for 12 to 18 hours a day, washing equipment, basic maintenance of equipment and tools, loading and unloading equipment, and delivering packages and equipment to drilling rigs. (Id. at 110-111.) Garza concedes that he drove out of state at least three times during his last three years of employment. The first two trips were made to Louisiana in a flatbed truck for the purpose of picking up another vehicle. (Id.) The third trip involved Garza's delivery of a piece of equipment (a blow out preventer) to a site in Louisiana for service. (Id. at 115-116; D.E. 18, Ex. A at 84.)[3]

In Songer, the Fifth Circuit noted that an important factor for determining "driver" status was whether an employee "must have a valid Class A commercial drivers license" as part of his duties. 618 F.3d at 469-470. In this case, the record shows that Garza did not actually possess a Class A Commercial Driver's License, which would have been required to operate Defendant's 18-wheeler tractor trailer. (D.E. 19, Ex. A (Garza depo.), p. 109, 116.) However, Defendant *required* all of its operators to obtain a Commercial Driver's License. Garza simply refused to obtain one – even though his employer repeatedly informed him that it was "mandatory for his job that he do so." (D.E. 18, Ex. E (excerpts from Garza's personnel file) at 2). In a March 30, 2010 report regarding Garza's resignation from his employment, Garza's supervisor wrote:

> Garza has refused to obtain a CDL License after being told by [management] that it was mandatory for his job that he do so. It is sometimes necessary for us to reschedule operators, and/or pull another operator in because he cannot pull a dual tandem trailer. He has one and one half years notice to obtain a CDL License, after being told he could use a company truck and trailer and that the company would pay for the License.

---

[3] In addition, Gibson states that he recalls seeing Garza at WCS' facility in Broussard, Louisiana, where Garza had apparently been sent with another employee in order to transport pressure-control equipment back to Texas. (D.E. 18, Ex. C at ¶ 20.)

(Id.) (emphasis in original). This evidence conclusively demonstrates that – regardless of Garza's personal habits – his job duties required him to have a CDL and that he was expected to drive in interstate commerce as part of his regular duties.

With respect to Plaintiff Camarillo, he testified that his job duties involved mainly maintaining equipment. He stated he did not have any understanding from his job interview or experience working for Defendant that he might have to go out of state, and that he never left Texas during his two and a half years on the job. (D.E. 19, Ex. B (Camarillo Depo.) at 114, 117) ("They never told me I was going to have to go out of state. In all the years that I worked there they never went out of state…No one ever asked me to go out of state.") However, Camarillo did have a Commercial Driver's License and testified that he frequently drove an F-250 Ford pick-up, as well as Defendant's 18-wheel tractor-trailers, in order to deliver equipment or operate equipment on site. (Id. at 120; D.E 18, Ex. B (Camarillo Depo.) at 32-43.)

Another important factor in Songer was that, upon hire, Plaintiffs were issued a copy of the relevant regulatory information and made to participate in a "New Hire Safety Orientation" to review the difference between interstate and intrastate hours of service regulations." After being hired, they had to record their hours of service and complete driver vehicle inspection reports. 618 F.3d. at 469-470.

In this case, both Plaintiffs concede that during the hiring process they signed an Interstate DOT (Department of Transportation) Agreement, stating that they acknowledged that during the course of their normal job duties they would be "subject to travel to other states (interstate)" to perform assigned duties and that they agreed to "comply with applicable DOT standards." (D.E. 18, Ex. A, Ex. B (exhibits attached to depositions).)[4] Camarillo also concedes

---

[4] Boyd's Interstate DOT Agreement stated the following:

that he kept a driver's log in order to keep track of his hours. (D.E. 19, Ex. B (Camarillo Depo.). at 46) ("Everyday you have to log whether you drive or you don't, even on your days off, you have to log, that way you keep track of your hours.")

As in <u>Songer</u>, this evidence indicates that – regardless of whether they frequently drove commercial motor vehicles outside the state of Texas – both Garza and Camarillo were hired as employees who might be "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of a driver." 618 F.3d 474. They can thus be classified as "drivers" under the MCA, exempting Defendant from the overtime requirements of the FLSA.

### b. Whether Plaintiffs Were "Loaders" Under the MCA

The summary judgment evidence also demonstrates that Plaintiffs were "loaders" whose activities affected motor vehicle safety in interstate commerce.

A "loader," as defined for purposes of the MCA, is an employee of a carrier subject to the MCA "whose duties include, among other things, the proper loading of his employer's motor vehicles **so that they may be safely operated on the highways of the country**." § 782.5 (emphasis added). A "loader's" duties "will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a 'loader,' in work directly affecting 'safety of operation' **so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced**

---

> Boyd's Rental Tools conducts activities all across the United States and transports our equipment in connection with these activities. Accordingly, Boyd's Rental Tools is a motor carrier governed by the Department of Transportation (DOT). Agreement:
>
> With the above being stated, I acknowledge that during the course of my normal job duties, I am subject to travel to other states (Interstate) to perform my assigned duties. I also agree to comply with applicable DOT standards.

(D.E. 18, Ex. A, Ex. B (exhibits attached to depositions).)

**load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized**." § 782.5 (emphasis added).

As discussed above, Defendant has established that its operations required it to transport equipment in interstate commerce on vehicles with a gross weight of over 10,001 pounds. The evidence shows that Garza and Camarillo were employees whose duties included loading equipment onto some of these vehicles and that, in doing so, they exercised discretion to ensure the safe operation of said vehicles.

Garza testified that he loaded Defendant's vehicles with equipment, secured the equipment, and that he would sometimes transport the equipment to location, work on it there, and then secure it again for the ride home. (D.E. 18, Ex. A (Garza Depo.) at 39-42). Garza stated that the purpose of securing the equipment was safety. (Id. at 40.) (Q: Would you actually secure this equipment, strap it down? A: Yes, sir. Q: And why is that? A: So it wouldn't fall off the road. Q: Because if it fell off the road what might happen? A: A catastrophic accident, people could be killed and then I would be responsible.)

Camarillo also testified that he loaded heavy equipment onto trucks, as well as single axle and double axle trailers, and secured the equipment to ensure safety. (D.E. 18, Ex. B (Camarillo Depo.) at 37-38.) When asked about the procedure he underwent in loading equipment onto Defendant's pickup trucks and trailers, Camarillo testified as follows:

> Q: When you – you mentioned earlier also about making sure you put the lubricator on first to even out the weight. Do you remember that?
>
> A: Well, I mean, if you're driving down the highway you don't want all the weight on one side.

Q: Why not?

A: I don't know.

Q: Is that – could it cause the load to shift?

A: Yeah. I'm sure it could cause you to flip over if you're turning too fast on a sharp turn and you have all your weight on one side or if you hit a ditch.

Q: So you – in loading the truck you did it in such a way that you made sure that it was safe?

A: Evened it out, yes.

Id. at 37-38.

Garza's and Camarillo's statements thus indicate that their duties included the "proper loading of [WSC's] motor vehicles so that they may be safely operated on the highways of the country" and that they had some responsibility "for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized." § 782.5. They were "loaders" under the MCA, exempting Defendant from paying overtime wages under the FLSA.

### c. The *De Minimis* Exception Does Not Apply

Plaintiffs argue that, if Plaintiffs were hired as "drivers" or "loaders" as defined in § 782(b) of the Code of Regulations, the *de minimis* exception should apply.

The Code, as well as the Supreme Court, have established that "where such safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*, the exemption will not apply to him in any workweek so long as there is no change in his duties." § 782.2(b)(3) (citing, Pyramid, 330 U.S. 695.)

In Coleman v. Jiffy June Farms, Inc., the court found both that employees' involvement in safety-affecting activities was *de minimis* and that their employer could not escape FLSA overtime provisions based on the MCA exception. 324 F.Supp. 664, 670 (S.D.Ala.1970), aff'd, 458 F.2d 1139 (5th Cir.1972). The court recognized that the employees were hired as full-time drivers or loaders. However, the court noted that the employer's out-of-state deliveries constituted a mere .23% of all deliveries and that the employer had "67 driver-loaders among whom this infinitesimal interstate traffic [was] allegedly divided. Assuming, *arguendo*, that the interstate work [was] so divided, each driver [would have spent] .00343% of his time in interstate commerce." Id.

The court in Coleman concluded that the employees' "occasional and minimal involvement with interstate commerce" was so insubstantial as to preclude application of the MCA exception, stating "the court does not feel constrained to allow an exemption which would deprive 67 working men of overtime compensation on the basis of a minimum of evidence of interstate activity which is minimal in its scope and minimal in its nature." Id. at 670; see also Wirtz v. C & P Shoe Corp., 336 F.2d 21, 29 (5th Cir. 1964) (holding three employees who drove occasionally, but not as their primary job, fell within the *de minimis* exception, stating that "[t]he primary jobs of these employees who sporadically helped on the trucks or acted as drivers did not include such work, and these infrequent activities on their part come within the *de minimis* rule set down by the Supreme Court in Pyramid Motor Freight Corporation v. Ispass."); Talton v. I.H. Caffey Distrib. Co., 1:02-CV-1048, 2004 U.S. Dist. LEXIS 6894, at *15 (M.D.N.C. Mar. 11, 2004) (stating that a single trip across state lines "falls squarely within the *de minimus* exception to interstate activities") (citing Dole v. Circle "A" Constr., Inc., 738 F. Supp. 1313, 1322 (D. Idaho1990) (a driver is not exempt under the Motor Carrier Act merely because he

takes one or two interstate trips); Kimball v. Goodyear Tire & Rubber Co., 504 F. Supp. 544, 548 (E.D. Tex. 1980) (denying Motor Carrier Act exemption where only 0.17% of trips were interstate)); Flowers v. Regency Transp., Inc., 535 F. Supp. 2d 765, 769 (S.D. Miss. 2008) ("While plainly, there is no requirement that an employer's interstate business be substantial or that its employees engage in a substantial volume of interstate activity in order that the employees come under the jurisdiction of the Secretary of Transportation, the connection by both with interstate commerce must be more than *de minimis*.")

However, "the Fifth Circuit has moved away from the *de minimis* test for drivers whose work only rarely involved interstate deliveries." See Villegas v. Dependable Const. Services, Inc., 2008 WL 5137321, *24 (S.D. Tex. Sec. 8, 2008) (citing Barefoot v. Mid-America Dairymen, Inc., 16 F.3d 1216 (5th Cir.1994) (unpublished) (citing Morris, 332 U.S. at 431)). The Fifth Circuit has since clarified that "it is **the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [Secretary's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.**" See id. (quoting Morris, 332 U.S. at 431-432) (emphasis added). When interstate trips are a "natural, integral and apparently inseparable part of the common carrier service of the employer and his drivers," and where, in the normal course of business, interstate commerce trips are "distributed generally throughout the year and their performance [is] shared indiscriminately by the drivers and [is] mingled with the performance of other like driving services," employees are subject to the Motor Carrier Act exemption even where not all drivers drive in interstate commerce. Id. at 332.

Most recently, in Songer, discussed above, the Fifth Circuit made clear that the question of whether the MCA exception applies depends on whether an employee "**can be reasonably

**expected to perform interstate transport**" and whether his job duties are such that he is or "**is likely to be**" "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of a driver." Songer, 618 F.3d at 474 (quoting 29 C.F.R. § 782.2(b)(3)) (emphasis added).

Here, unlike in Coleman and other cases applying the *de minimis* exception, the evidence establishes that Defendant was regularly engaged in interstate transportation and that both Garza and Camarillo performed – or were expected to perform – driving and loading duties that affected the safety of operations of motor vehicles in interstate commerce. Under this standard, it does not matter whether Garza only left Texas three times or Camarillo not at all. Rather, the important point is that WCS expected them to, and could have asked them to, perform the safety-affecting activities of drivers and loaders at any time. Songer, 618 F.3d at 474.

Thus, the Court finds the evidence on summary judgment could not convince a reasonable jury that Plaintiffs were not "drivers" or "loaders" under the MCA, or that Plaintiffs' safety-affecting activity as "drivers" or "loaders" was *de mimimis*.[5] Defendant's motion for summary judgment is granted.

---

[5] This Court previously concluded in another case that the MCA exemption might not apply to an employee of W-H Energy Services. See Yaklin v. W-H Energy Services, Inc., No C-07-422 (S.D. Tex. Oct. 22, 2008; D.E. 128). However, Yanklin was decided prior to the Fifth Circuit's decision in Songer. Moreover, Yaklin is easily distinguishable from the instant case in at least two respects. First, the employer was a different company performing different services. In this case, Defendant has provided competent evidence that its trucks transported equipment weighing in excess of 10,001 pounds and that its activities affected interstate commerce; and Plaintiffs have not refuted this evidence. Second, the employee in the Yanklin case worked primarily in the shop. (Id. at p. 2). His responsibilities involved:

> Inputting the fuel logs in the computer … [p]urchasing nitrogen, order[ing] parts, issu[ing] PO's [i.e., purchase orders], input[ting] all the bills into a database that was sent to Broussard for pay, [running] parts, [taking] water readings for the wash system, help[ing] mechanics after hours in the shop, [taking] care of the parts room, [keeping] them stocked and up to date, [and] issu[ing] out parts when mechanics or supervisors need[ed] them.

Id. at 2-3. In this case, Plaintiffs' job responsibilities included driving Defendant's equipment to well sites, wherever they might be. See Gonzalez, et al v. Smith International, Inc., et al, C.A. No. C-08-cv-311, D.E. 77 (a

## IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (D.E. 18) is GRANTED.

SIGNED and ORDERED this 7th day of March, 2011.

_____
Janis Graham Jack
United States District Judge

---

recent case from this court finding that similarly situated "operators" employed by precisely the same defendant were "drivers" whose activities qualified defendant for the MCA exemption from the FLSA.)